(Surrogate's Court, New York County. November, 1900.)

WILLS—UNDUE INFLUENCE.

> Evidence that a testator, a man capable of transacting important business, and animated by a desire to transfer his business enterprises to those bearing his family name, consulted with his sons in making a will which favors them and changes a former will, does not establish undue influence sufficient to prevent probate thereof, when there is no great discrimination as between the natural recipients of his bounty.

Petition for the probate of the will of Robert Bonner, deceased. Probate decreed.

Underwood, Van Vorst, Rosen & Hoyt, for proponents.

David McClure, special guardian, for contestants.

FITZGERALD, S. The contestants assert that the instrument propounded as the last will and testament of Robert Bonner, deceased, is not his last will and should not be admitted to probate, because he was not acting as a free agent in executing it. This assertion is based upon the claim that the physical and mental condition of the decedent at the time the instrument was executed was such that he was readily susceptible to the influence of the persons benefited by

that instrument, and it was by the exercise of an overbearing influence that the changes in the testamentary disposition of Mr. Bonner were effected. In the case at bar there are lacking many of the elements which frequently accompany the domination of one mind over another in procuring a testamentary disposition of property. No effort appears to have been made to prevent free access to the testator by the persons who are alleged to have been discriminated against in the instrument. I do not find from the testimony that Mr. Bonner's mind "was impaired by age, sickness, disease, intemperance, or any other cause which might have overcome a mind naturally strong and unimpaired." The terms of the will, either standing alone or as compared with the will of 1898, are not "grossly unjust, or the division unequal." The argument which is based on the difference between the two wills is very much weakened—First, by the fact that the will of 1898 was only intended as tentative; and, second, the execution of another will was rendered imperative by the death of decedent's son Andrew Allen Bonner. To support the claim of undue influence in this case, it must be found that the persons benefited by the change of the testamentary purposes of the testator in the paper in controversy engaged in, or were cognizant of, a conspiracy to effect it. To accomplish their purpose, I must find that these sons, reputable men of mature years, with means of their own, who appear to have enjoyed the affection and confidence of their parent, were guilty of the employment of artifice, deceit, and fraud upon an unsuspecting and affectionate father, who was nearing his end, and of abusing the confidence which he reposed in them. There is nothing surprising in the fact that the testator consulted with his sons in making his will. This circumstance was not peculiar to the will of 1899. As far back as June, 1886, he appears to have modified his testamentary intentions upon the request of his sons. Contestants' exhibit is in evidence (No. 17), which is a memorandum in the writing of Robert Bonner, and signed by him as of that date, was written at a time when Mr. Bonner was admittedly in the full possession of his faculties, was not susceptible to undue influence, and no attempt had been made, or would have been successful, to overpower his judgment. Reasonable solicitation upon the part of children or other near relatives is not an indication of undue influence. Reasonable importunity, the courts have held, may even be permitted to persons closely related to the testator, without impairing the will. There is no evidence here of urgent solicitation or importunity. I have not been convinced that there was any great discrimination as between the natural recipients of the testator's bounty. Whatever difference there was is fully accounted for by the habits of the man, his mode of life, and his well-known characteristics. He was proud, to boastfulness, of "Bonner blood" and "Bonner brains." It is in evidence that he wished to keep the Bonner fortune in Bonner hands; that he desired his money should follow the blood. During life he took an absorbing interest in horses. His name had been prominently identified with the improvement of the breed of horses, their care and training. Is it surprising that he was anxious that the stable he had collected, whose possession had cost him a fortune, should be

possessed and enjoyed by those of his own name and blood, and his name remain associated with it? In his lifetime, and at a period when his mental vigor was unquestioned, when it is not suggested that his will could be dominated by another, he had turned over the New York Ledger to his sons, giving to his daughter no share therein. Did not this manifest his pride of family, his concern that this enterprise should remain identified with the name of its founder? I feel compelled to believe that he was animated by a similar motive in disposing of his stable. To entertain the notion that Mr. Bonner was unduly influenced in executing the paper propounded, I must assume that at the time of its execution and immediately prior thereto his intellectual faculties had been impaired, and that he had mentally deteriorated. The evidence shows that the witness whose testimony is chiefly relied upon to establish the facts essential to sustaining the contention of the contestants was in frequent communication with the decedent at about this time, and made no objection to transacting important business concerning the disposition of her interest in the Ledger property. It is unlikely that she would have done this unless the testator was then in a fit mental condition to transact business. Her willingness to discuss with Mr. Bonner the negotiation of the agreement in respect to her interest in the Ledger property, and take his advice with reference to the execution of the agreement, was a practical recognition of his mental capacity, and the strongest kind of evidence of her belief in his unimpaired mental power. The objections to the probate of the paper propounded have not been sustained by the evidence adduced, and a decree may be submitted admitting the will to probate.

Probate decreed.